United States District Court
Northern District of California

1

2

3          **UNITED STATES DISTRICT COURT**

4          **NORTHERN DISTRICT OF CALIFORNIA**

5          **SAN JOSE DIVISION**

6

7    HERGUAN UNIVERSITY,                    Case No.  16-cv-06656-BLF

          Plaintiff,
8
                                            **ORDER DENYING PLAINTIFF'S EX**
9          v.                               **PARTE APPLICATION FOR**
                                            **TEMPORARY RESTRAINING ORDER**
10   IMMIGRATION AND CUSTOMS
     ENFORCEMENT (ICE), et al.,             [Re:  ECF 7]
11
          Defendants.

12

13        Plaintiff Herguan University ("Herguan" or "University") filed this action on November

14   16, 2016, and one day later sought a temporary restraining order ("TRO") to enjoin Defendants

15   Immigration and Customs Enforcement ("ICE") and Student and Exchange Visitor Program

16   ("SEVP") (collectively, "Defendants") from effecting the Withdrawal on Notice ("WON") of

17   Herguan University's I-17 authority and terminating Herguan University's access to the Student

18   and Exchange Visitor Information System ("SEVIS").[1]  Mot. 1–2, ECF 7.  The Court held a

19   hearing on the TRO on November 22, 2016, and both parties appeared.  For the reasons discussed

20   below and on the record, the Court DENIES Herguan's application for a TRO without prejudice to

21   Herguan later seeking a preliminary injunction.

22   I.    **BACKGROUND**

23        A.    **Factual Background**

24        Herguan University is a private institution authorized to admit foreign students under the

25   SEVP.  Mot. 4.  On February 14, 2008, SEVP certified Herguan University, approving it to issue

26   _____

27   [1] SEVIS is a congressionally mandated web-based information system used by the Department of
     Homeland Security to track and monitor nonimmigrant students while they reside in the United
28   States in F- or M- nonimmigrant status, as well as the U.S. educational institutions that enroll
     them. Ex. 1 to Mot., at 2, ECF 7-4 ("ICE Letter").

1    Forms I-20 for F-1 visas for foreign students. *Id.* Herguan's owner and president is Ying Wang.

2    Ice Letter at 3. The elder Mr. Wang appointed his son Jerry Wang to serve as the Principal

3    Designated School Official ("PDSO"). [2] To maintain its certification, Herguan must comply with

4    certain government regulations. Schools that do not comply with applicable regulatory provisions

5    concerning school certification and/or nonimmigrant student are subject to withdrawal of their

6    SEVP certification. To commence a withdrawal proceeding, SEVP issues a Notice of Intent to

7    Withdraw ("NOIW") to the school informing it of the reasons for withdrawal. The school then

8    has an opportunity to respond to the alleged violations. If, after consideration of the school's

9    response to the NOIW, SEVP decides to withdraw a school's certification, SEVP will issue a

10   WON. The school then may appeal to the SEVP Appeals Team ("SAT"). ICE Letter at 2.

11       On August 2, 2012, after conducting a site visit and commencing an investigation, SEVP

12   served a NOIW Herguan's approval to issue F-1 visas. Mot. 4. That same day, Jerry Wang was

13   arrested and charged with violating his status as the PDSO. *Id.* Given the ongoing investigation,

14   SEVP terminated the school's access to SEVIS. *See* Order Denying Application for Temporary

15   Restraining Order, *Herguan Univ. v. Immigration & Customs Enf't* (*Herguan I*), No. 12-cv-4364,

16   ECF 9 (N.D. Cal. Aug. 21, 2012). In response, Herguan University filed an ex parte application

17   for a TRO requiring ICE and SEVP to reinstate access to SEVIS until the criminal proceedings

18   were completed. *Id.* at 2. The court denied Herguan's request because it was not filed pursuant to

19   a complaint, petition, or other similar document detailing the causes of action underlying the

20   request for injunctive relief, and because the court lacked jurisdiction. *Id.* at 3–4.

21       The day after the court denied Herguan's request, it filed another ex parte application for a

22   TRO to enjoin ICE and SEVP from requiring it to respond to the NOIW by September 1, 2012,

23   and hold the NOIW in abeyance until the criminal proceedings against Wang were completed. *See*

24   *Herguan Univ. v. Immigration & Customs Enf't* (*Herguan II*), No. 12-cv-4403, ECF 11 (N.D. Cal.

25   Aug. 22, 2012). The *Herguan II* court denied the motion because the University did not establish

26

27   ───────────────────

28   [2] Each SEVP-certified school appoints a PDSO, and may appoint additional Designated School Officials ("DSOs"), to carry out its record-keeping and other SEVP related responsibilities. ICE Letter at 2.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   that it was likely to succeed on the merits.  *Id.* at 2 (holding that Plaintiffs did not provide evidence

2   suggesting that the agency violated the Administrative Procedure Act).

3          On September 18, 2012, after the court's rulings, SEVP withdrew Herguan's certification.

4   Mot. 4.  One month later, SEVP rescinded this withdrawal and reinstated Herguan's access to

5   SEVIS and ability to issue F-1 visas.  *Id.*  On March 31, 2015, SEVP again withdrew Herguan's

6   certification.  *Id.* at 5.  The basis of the withdrawal consisted of the same allegations that formed

7   SEVP's prior NOIW—*i.e.*, it did not contain any new factual allegations.  *Id.*

8          Several weeks later, Mr. Wang pled guilty to 18 U.S.C. § 1001, making a false statement

9   to a federal officer concerning access to SEVIS.  *Id.*  Although Mr. Wang did not plead guilty to

10  visa fraud, in his written plea agreement he stated the following:

> I agree that I [ ] participated in a scheme to commit visa fraud,
> which involved more than one hundred immigration-related
> documents known as Forms I-20.  I further agree that I knowingly
> and intentionally assisted Herguan employees in accessing, without
> government authorization, SEVP's nonpublic computer database
> known as the [SEVIS].

14  Plea Agreement, *United States v. Wang*, No. 12-cr-581, ECF 168 (N.D. Cal. filed Apr. 9, 2015);

15  ICE Letter at 4; Mot. 5.

16         On April 15, 2015, Herguan appealed the withdrawal.  Mot. 5; Ex. 5 to Mot., at 2, ECF 7-8

17  ("Remand Letter").  Upon review of the record, which did not include the outcome of the criminal

18  case against Mr. Wang, SAT remanded the case to SEVP's Analysis and Operations Center

19  ("SAOC") to consider the impact of Mr. Wang's plea agreement.  Remand Letter 2; Mot. 5.

20  SEVP again withdrew Herguan's certification on June 13, 2016.  Mot. 6.  According to Plaintiff,

21  the sole basis for the withdrawal was that Mr. Wang had pled guilty to making a false statement to

22  a federal officer in violation of 18 U.S.C. § 1001.  The University's position is that there is no

23  justification for concluding that this incident, which occurred nearly six years prior to the agency's

24  action, should be used against Herguan.  *Id.*  Accordingly, Herguan appealed the decision, which

25  SEVP subsequently reaffirmed on September 1, 2016.  *See generally* ICE Letter.

26         Before SEVP affirmed its decision, Herguan filed a *Bivens* action against SEVP's lead

27  officers, Jason Kanno and Susanna Warner.  *See Herguan Univ. v. Kanno* (*Herguan III*), No. 16-

28  3619 (N.D. Cal. filed June 27, 2016).  In *Herguan III*, the University alleged that Kanno and

3

Warner attempted to conspire with accrediting agencies to revoke its accreditations in an attempt to force the University to cease operations. Mot. 6. Herguan also alleged that Kanno and Warner had a "racist agenda to shut down Asian owned and operated SEVP certified universities such as Herguan." *Id.* Herguan voluntarily dismissed the action on November 21, 2016, four days after filing the complaint in this action and the day before this Court held a hearing on the instant TRO. *See* Notice of Voluntary Dismissal Without Prejudice, *Herguan III*, ECF 21 (N.D. Cal. filed Nov. 21, 2016).

### B. Procedural History

In its fourth bite at the apple, and 77 days after SEVP affirmed its decision withdrawing Herguan's certification, Herguan University filed the action underlying this TRO. *See generally* Compl., ECF 1. In the complaint, Herguan alleges that SEVP's September 1, 2016, decision was contrary to law and in violation of the Administrative Procedure Act, 5 U.S.C. §§ 551–59. *Id.* ¶¶ 26–28. Plaintiffs seek a declaration that Defendants' actions were unlawful, an order requiring Defendants to reinstate Herguan's certification, and a writ of mandamus ordering SEVP to adjudicate Herguan's multiple upgrade requests that were initiated in 2010. *Id.* ¶¶ 29–34. Herguan also alleges that ICE and SEVP violated its equal protection rights. *Id.* ¶¶ 35-39. One day after bringing the action, Plaintiff filed the instant application for a TRO enjoining ICE and SEVP from effecting the WON of its I-17 and terminating Herguan's access to SEVIS. *See generally* Mot.

## II. LEGAL STANDARD

The substantive standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that

the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. at 20. Alternatively, an injunction may issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," provided that the plaintiff can also demonstrate the other two *Winter* factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (citation and internal quotation marks omitted). Under either standard, the plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

## III.  DISCUSSION

Before addressing the *Winter* factors, the Court addresses a preliminary matter. Although Herguan University styles its TRO application as brought "ex parte," the application indicates that it notified Defendants of the application on November 18, 2016. *See* ECF 12. Moreover, Defendants' attorneys received notice of the TRO application and the hearing, as evidenced by their appearance at the November 22, 2016, hearing. *See* ECF 15. Accordingly, Plaintiffs need not satisfy the procedural requirements for issuance of a TRO without notice. *See* Fed. R. Civ. P. 65(b).

Herguan argues (1) it is likely to succeed on the merits, (2) it will suffer immediate and irreparable harm if the Court does not grant its application for a TRO, and (3) Defendants will suffer no harm if a TRO is issued. Mot. 7–12. The University's motion does not address the remaining *Winter* factors.

The Court notes that Herguan waited 77 days after SEVP affirmed its decision before filing this application for a TRO. Moreover, the University filed the application in this newly filed action, rather than in *Herguan III*, which was proceeding before another judge in this district, further delaying the process. Nevertheless, the Court is satisfied that the University has demonstrated that it will suffer immediate and irreparable harm if the Court does not grant its application. In his declaration, Richard Friberg, the Vice President of Organizational Development for Herguan University, states that the school will lose its accreditation once SEVIS access is terminated, and that the University does not currently have access to SEVIS. Friberg

United States District Court
Northern District of California

1    Decl. ¶¶ 8–9, ECF 8.  Indeed, at the hearing, Herguan stated that it believed its accreditation

2    would be withdrawn on November 28, 2016, if the Court did not grant its application for a TRO.

3    If the University loses its accreditation, all of its foreign students must transfer to other schools.[3]

4    Friberg Decl. ¶ 8.  This suffices to demonstrate immediate and irreparable harm.

5           Despite this, Herguan has not demonstrated a likelihood of success on the merits nor a

6    serious question going to the merits of its claims.  The University contends that consideration of

7    Mr. Wang's criminal history in SAT's decision to remand the case to SAOC was wholly contrary

8    to law for two reasons: (1) SEVP incorrectly relied on 8 C.F.R. § 214.3(h)(2)(iii)(B) and (2) the

9    doctrines of laches and estoppel preclude SEVP from relying on Mr. Wang's criminal history.

10   Mot. 10.

11          As to the former, Plaintiff contends that section 214.3(h)(2)(iii)(B) refers solely to the

12   recertification process, whereas the issue facing SEVP here was withdrawal of an already

13   approved I-17, which is subject to 8 C.F.R. § 214.4(i).  Id. at 10–11.  Further, under the correct

14   regulation, past performance of the school's PDSO may be used only to assess the school's

15   present compliance with SEVP's requirements.  Id. at 10.

16          The Court does not find Herguan's arguments persuasive.  First, Herguan cites no authority

17   to support its claim that SEVP relied on the incorrect regulation.  Moreover, at the November 22,

18   2016, hearing, Defendants stated that the cited regulation applies to both recertification and

19   assessment for withdrawal purposes, and was therefore correct.  Without support for the argument

20   that SEVP applied the incorrect regulation, the Court is unable to second guess SEVP's decision

21   to apply section 214.3(h)(2)(iii)(B).

22          Second, even if Plaintiff were correct that 8 C.F.R. § 214.4(i) is the applicable regulation,

23   that section does not limit consideration of the PDSO's conduct to assess the school's present

24   compliance with SEVP's requirements.  In relevant part, section 214.4(i) provides:

25              SEVP will not determine a SEVIS access termination date for [a
                school whose SEVP certification is relinquished or withdrawn] until
26              the appeals process has concluded and the initial denial or
                withdrawal has been upheld unless a school whose certification is

27   ────────────────────

28   [3] At the hearing, Defendants stated that foreign students comprise 95 percent of Herguan's
     enrollment.  The University did not contest this fact.

United States District Court
Northern District of California

> withdrawn or whose recertification is denied is suspected of criminal
> activity or poses a potential national security threat.

8 C.F.R. § 214.4(i)(2).  On its face, this language appears to require SEVP to wait to terminate a school's access to SEVIS until the appeals process has concluded; it does not limit consideration of the PDSO's conduct to assess present compliance.  Herguan also cites section 214.4(a)(2)(vi) to support its assertion that SEVP can only consider present or perspective acts when withdrawing a school's certification.  Mot. 11.  Section 214.4(a)(2)(vi) states that certification will be withdrawn "if the school or school system is determined to no longer be entitled to certification for any valid and substantive reason including, but not limited to, the following: . . . [ ] [c]onduct on the part of a DSO that does not comply with the regulations."  8 C.F.R. § 214.4(a)(2)(vi).  The subsection cited by Plaintiff provides 18 additional reasons SEVP may withdraw a school's certification, and the regulation itself makes plain that the list is not intended to be exhaustive.  Thus, the Court also finds this argument without merit.

Finally, the Court cannot conclude that Herguan is likely to succeed on its argument that the doctrine of laches and estoppel prevent SEVP from withdrawing its certification.  *See* Mot. 11.  Herguan argues that laches prevents SEVP from considering Mr. Wang's criminal conduct because the information is irrelevant and prejudicial.  *Id.*  The University also argues that SEVP waived its right to consider Mr. Wang's criminal conduct because SEVP allowed the school to operate for four years after Mr. Wang's plea agreement and did not raise the issue.  *Id.* at 11–12.  Again, Herguan provides no authority supporting its argument.  In addition, a review of the facts reveals just the opposite—SEVP raised the issue of Mr. Wang's conduct several times since his arrest in 2012.  In fact, in between Mr. Wang's arrest and the September 1, 2016, decision to uphold the withdrawal of Herguan's certification, SEVP temporarily terminated the school's access to SEVIS, withdrew the school's certification and (September 2012 and March 2015), and remanded the issue of withdrawal to the SAOC for consideration of Mr. Wang's plea.  Finally, the agency already addressed and dismissed the very argument at issue here.  *See* ICE Letter at 6.  Because the University has not provided the Court with the standard of review by which it is to review SEVP's decision as to laches and estoppel, the Court is unable to determine that SEVP's action was improper.

Accordingly, the Court concludes that the University has not demonstrated a likelihood of success on its claim that SEVP's conduct was contrary to law.  Having concluded that Herguan University has failed to demonstrate a likelihood of success or serious questions going to the merits, the Court need not reach the remainder of the *Winter* factors.  *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) ("[A]t an irreducible minimum the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation.").  Accordingly, Plaintiff's TRO application is DENIED.

**IT IS SO ORDERED.**

Dated:  December 2, 2016

BETH LABSON FREEMAN
United States District Judge