UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HERGUAN UNIVERSITY,<br><br>          Plaintiff,<br><br>     v.<br><br>IMMIGRATION AND CUSTOMS<br>ENFORCEMENT, et al.,<br><br>          Defendants. | Case No. 16-CV-06656-LHK<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS WITH<br>PREJUDICE**<br><br>Re: Dkt. No. 39 |

Plaintiff Herguan University ("Plaintiff") brings the instant suit against Defendants

Immigration and Customs Enforcement ("ICE") and Student and Exchange Visitor Program (the

"Exchange Program" or "SEVP") (collectively, "Defendants"). Before the Court is Defendants'

Motion to Dismiss. ECF No. 39 ("Mot."). Having considered the parties' briefing, the relevant

law, and the record in this case, the Court GRANTS Defendants' Motion to Dismiss with

prejudice.

I.      **BACKGROUND**

This case involves an Administrative Procedure Act ("APA") challenge to the Exchange

Program's decision to withdraw Plaintiff's certification to enroll foreign nonimmigrant students.

The APA claim specifically challenges the Exchange Program's Appeals Team's ("Appeals

1

Team's") September 1, 2016 decision to affirm the Exchange Program's withdrawal of certification. ECF No. 1-1 ("Appeals Team Decision"). Plaintiff also seeks a declaratory judgment that the Exchange Program's decision was wrong. Finally, Plaintiff asserts that Defendants committed an equal protection violation. The facts set forth below are found in the administrative record, Plaintiff's complaint, and documents from related federal cases.

### A. Statutory Background and Plaintiff's Certification to Enroll Foreign Students

Plaintiff is a private university that enrolls foreign nonimmigrant students on student visas. ECF No. 38, First Amended Complaint ("FAC") ¶ 23. In order to enroll foreign nonimmigrant students, a university must be certified to do so by the Exchange Program. 8 C.F.R. § 214.3(a). To obtain certification, a university must apply by submitting Form I-17 to the Exchange Program, which is entitled "Petition for Approval of School for Attendance by Nonimmigrant Students." *Id.* The Exchange Program will certify a school to enroll foreign nonimmigrant students if the school shows that it is a "bona fide school," it "possesses the necessary facilities, personnel, and finances to conduct instruction in recognized courses," and "is, in fact, engaged in instruction in those courses." *Id.* § 214.3(a)(3)(i). The certification is provided for a school's particular degree program, not necessarily for every course and degree program at a school. *Id.*

As part of the I-17 application, the university assigns a person to be the Principal Designated School Official ("Principal Designated Official"), who serves as the main point of contact with the Exchange Program and carries out responsibilities related to the Exchange Program. *Id.* The school can also appoint other Designated School Officials ("Designated Officials") to carry out other Exchange Program related activities. The Designated Officials have access to, and maintain records in, the Student and Exchange Visitor Information System ("SEVIS"). Designated Official access to SEVIS is necessary to continue admitting foreign nonimmigrant students and to ensure that students maintain their visa status. Designated Officials are in charge of issuing Form I-20, the form students need to obtain or update their F-1 or M-1 student visas.

A school that has obtained certification to issue Form I-20 can lose that certification in a

Case No. 16-CV-06656-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

number of ways.  First, a university must apply for recertification every two years and that recertification can be denied for a number of reasons set forth in 8 C.F.R. § 214.4(a)(2).  Second, if the Exchange Program obtains information that a school is no longer eligible for certification because of one of the reasons set forth in § 214.4(a)(2), the Exchange Program may initiate an "out-of-cycle" review.  To withdraw certification after such an out-of-cycle review, the Exchange Program must first provide the school a Notice of Intent to Withdraw Certification at least 30 days before withdrawal and an opportunity to challenge the bases for withdrawal.  *Id.* § 214.4(b).  The Exchange Program may then withdraw the school's certification.  *Id.*

On February 14, 2008, the Exchange Program certified Plaintiff to issue Form I-20 for F-1 visas for foreign nonimmigrant students for a degree program in Chinese Medicine.  FAC ¶ 4. Plaintiff's owner and president is named Ying Wang.  Appeals Team Decision at 2.  Ying Wang appointed his son, Jerry Wang, to serve as the Principal Designated Official.  FAC ¶ 8.  Jerry Wang was also the Chief Executive Officer ("CEO") of Plaintiff.  *Id.*  No other Designated Official was appointed.  *Id.*

**B.    Exchange Program Investigation, Jerry Wang's Criminal Charges, and Other Events in 2010–2012**

On November 17, 2010, the Exchange Program conducted a site visit and began an investigation as to whether Plaintiff was complying with Exchange Program regulations.  *Id.* ¶ 5.[1] The Exchange Program made multiple requests for evidence to Plaintiff over the following year as part of its investigation.  *Id.* ¶ 6–8.

On July 24, 2012, a federal grand jury returned an indictment against Jerry Wang, Plaintiff's Principal Designated Official, for (1) conspiracy to commit visa fraud in violation of 18 U.S.C. § 371, (2) four counts of visa fraud in violation of 18 U.S.C. § 1546, (3) unauthorized access to a government computer in violation of 18 U.S.C. § 1030, (4) seven counts of use of a

---

[1] The Court notes that this was not necessarily the first action taken by the Exchange Program. The government asserts that the Exchange Program "began to notice compliance issues" in 2008, "and on September 23, 2008, [the Exchange Program] served a [Notice of Intent to Withdraw Certification] on [Plaintiff] for issuing Forms I-20 for unapproved [degree] programs."  Mot. at 5.

false document in violation of 18 U.S.C. § 1001, and (5) two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. *See United States v. Wang*, N.D. Cal. Case No. 12-CR-00581-EJD ("Criminal Case") ECF No. 1.

On August 2, 2012, the Exchange Program issued Plaintiff a Notice of Intent to Withdraw Certification ("2012 Notice"). FAC ¶ 8. On the same day, Jerry Wang was removed as the Principal Designated Official, his access to the SEVIS system was revoked, and he was arrested on the above-mentioned criminal charges. *Id.*; *see also* Criminal Case ECF No. 3 (initial appearance on August 2, 2012).

On August 20, 2012, Jerry Wang and Plaintiff filed an ex parte application for a temporary restraining order ("TRO"). *See Herguan Univ. v. Immigration & Customs Enf't*, N.D. Cal. Case No. 12-CV-04364-EJD ("*Herguan I*") ECF No.1. The application for a TRO sought to reinstate access to SEVIS "until the criminal proceedings [against Jerry Wang] ha[d] been completed." *Id.* ECF No. 9 ("Order Denying *Herguan I* TRO") at 2. The *Herguan I* court denied Jerry Wang and Plaintiff's application for a TRO because Jerry Wang and Plaintiff had failed to file a complaint with their application for a TRO. *Id.* The failure to file a complaint with an application for a TRO violated the Civil Local Rules and also precluded a finding of subject matter jurisdiction because there were no asserted claims or an amount in controversy that satisfied the requirements of federal question or diversity jurisdiction. *Id.*

On August 22, 2012, Jerry Wang and Plaintiff filed a second ex parte application for a TRO. *Herguan Univ v. Immigration & Customs Enf't*, N.D. Cal. Case No. 12-CV-4403-PSG ("*Herguan II*") ECF No. 1. The same day, Magistrate Judge Paul Grewal denied the application for a TRO because "Plaintiffs have not established that they are likely to succeed on the claim that Defendants have violated rights redressible under the Administrative Procedure Act by terminating Wang's SEVIS ID and password prior to withdrawal of the University's I-17 certification." *Id.* ECF No. 8 ("Order Denying *Herguan II* TRO").

The FAC alleges that on September 18, 2012, the Exchange Program withdrew Plaintiff's certification, but that the Exchange Program "rescinded its withdrawal" in October 2012. FAC

Case No. 16-CV-06656-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

### C. Exchange Program Withdrawal of Certification, Plaintiff's Appeal, and Jerry Wang's Change of Plea

For the next two-and-a-half years, the Exchange Program allowed Plaintiff to continue issuing I-20 forms for F-1 nonimmigrant student visas for its Chinese Medicine degree program, but did not allow Plaintiff to add any new programs for which student visas could be issued. *Id.* ¶ 11. The Appeals Team indicates that the delay occurred because of the criminal proceedings pending against Jerry Wang. Appeals Team Decision at 4 ("Due to the potential complications arising from the overlapping issues in the criminal and civil cases, [the Exchange Program] allowed the criminal case to proceed first while continuing to monitor the school and permitting it to operate."). On March 31, 2015, the Exchange Program withdrew Plaintiff's certification based on the factual bases described in the 2012 Notice. *Id.* ¶ 12.

On April 9, 2015, Jerry Wang agreed "to plead guilty to Count Twelve of the captioned Superseding Indictment charging [him] with using a false document, in violation of 18 U.S.C. § 1001(a)(3)." Criminal Case ECF No. 168 ("Plea Agmt.") ¶ 1. Jerry Wang's plea agreement provided the following factual basis:

> I agree that I am guilty of the offense to which I am pleading guilty, and I agree that the following facts are true: On or about December 16, 2010, I was the Chief Executive Officer and sole Designated School Official for Herguan University, located in Sunnyvale, California. On this date, I knowingly made and used a false document, specifically an Academic Warning Letter for Herguan University, knowing that it contained a materially false, fictitious, or fraudulent statement, in a matter within the jurisdiction of the U.S. Department of Homeland Security, part of the executive branch of the United States, by providing it to DHS's Student and Exchange Visitor Program ([the Exchange Program]).

> I agree that I also participated in a scheme to commit visa fraud, which involved more than one hundred immigration-related documents known as Forms I-20. I further agree that I knowingly and intentionally assisted Herguan employees in accessing, without government authorization, [the Exchange Program's] nonpublic computer database known as the Student and Exchange Visitor Information System (SEVIS). I agree that this computer was used nonexclusively by or for the United States Government, but that the unauthorized access that I facilitated affected that computer's use by or for the United States Government.

Plea Agmt. ¶ 2; *see also* Appeals Team Decision (relying on Plea Agreement).

The "Academic Warning Letter" referred to in Jerry Wang's plea agreement was a letter sent to students after the Exchange Program began to initiate its investigations. Appeals Team Decision at 3. Plaintiff had been allowing students to take classes online without sufficient in-person classes under Exchange Program regulations. *Id.* When the Exchange Program informed Plaintiff of the issue, Jerry Wang drafted the Academic Warning Letter, which stated that students would be required to attend in-person classes at the end of the school year. *Id.* Jerry Wang sent the letter to Exchange Program officials, but never sent it to students, and never held the promised classes. *Id.* Plaintiff's plea agreement confirms that the Academic Warning Letter was fraudulent.

On April 15, 2015, Plaintiff appealed the March 31, 2015 withdrawal of its certification. FAC ¶ 14. On July 7, 2015, the Appeals Team remanded the withdrawal of certification to the Exchange Program because the withdrawal occurred before Jerry Wang's guilty plea, which the Appeals Team held was "previously unavailable and relevant information" that should be considered by the Exchange Program. ECF No. 1-2.[2]

**D.    Final Withdrawal of Certification and Appeal**

On November 9, 2015, following remand, the Exchange Program issued another Notice of Intent to Withdraw Certification ("2015 Notice"). ECF No. 1-4 at 1. On June 13, 2016, the Exchange Program withdrew Plaintiff's certification. *Id.* ("June 13, 2015 Withdrawal of Certification"); FAC ¶ 16. The withdrawal of certification provided the following reason for withdrawing Plaintiff's certification:

> The felony violation of Jerry Wang, who was both the [Principal Designated Officer] and CEO for Herguan University, as well as the son of the school's owners, and his admissions in the plea agreement that he participated in a scheme to commit visa fraud, demonstrate a failure by Herguan University to comply with federal regulations governing [Exchange Program] certification.
>
> . . . .
>
> The Exchange Program also finds Herguan University facilitated the unauthorized access of SEVIS—a nonpublic official governmental database. Jerry Wang

---

[2] The remand was technically sent to the Exchange Program's Analysis and Operations Center, however, for the purpose of simplicity the Court also refers to the Analysis and Operations Center as "the Exchange Program."

Case No. 16-CV-06656-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

> admitted to knowingly and intentionally assisting unauthorized Herguan
> University employees in accessing SEVIS. . . . Allowing unapproved school
> officials to access SEVIS is a violation of [Exchange Program] regulations.
> Schools found to violate these regulations are subject to withdrawal pursuant to *8
> CFR 214.4(a)(2)(viii) and (ix)*.
>
> . . . .
>
> Though the school insists Wang acted alone, the lack of institutional control to
> prevent his criminal acts as well as his admission that he was a "participant in a
> scheme" renders the school culpable if not for his criminal acts then an
> institutional failure to comply with the regulations. As such, [the Exchange
> Program] finds the school is subject to withdrawal pursuant to *8 CFR
> 214.4(a)(2)(vi), (viii) and (xi)*.

June 13, 2015 Withdrawal of Certification at 3–5.

On September 1, 2016, the Appeals Team affirmed the Exchange Program's withdrawal of certification (hereafter, "Appeals Team Decision"). *See* Appeals Team Decision. The Appeals Team relied on 8 C.F.R. § 214.4(a)(2)(vi), which provides that certification will be withdrawn "for any valid and substantive reason including, but not limited to . . . (vi) conduct on the part of a [Designated Official] that does not comply with the regulations." *Id.* at 5. The Appeals Team determined that the Exchange Program had correctly withdrawn Plaintiff's certification because Jerry Wang's actions as Plaintiff's Principal Designated Official "clearly constitute 'valid and substantive' reasons for withdrawing the school's [Exchange Program] certification." *Id.*

Specifically, the Appeals Team pointed to the fact that the Principal Designated Official is "the point of contact on any issues related to the school's compliance with the regulations." *Id.* at 5 (quoting 8 C.F.R. § 214.3(l)(1)(ii)). Moreover, the Designated officials "may not delegate th[eir] designation to any other person." *Id.* (citing 8 C.F.R. § 214.3(l)(1)). The Appeals Team relied on Jerry Wang's plea agreement and found that the regulations had been violated for the following reasons:

> The evidence of record shows that Jerry Wang did not commit an isolated,
> insignificant, or unknowing violation of his responsibilities but, instead, flouted
> his obligations by admitting to participating in a scheme to commit visa fraud
> involving "more than one hundred immigration-related documents known as
> Forms I-20" and "knowingly and intentionally assisting Herguan employees in
> accessing . . . SEVIS" and that the "unauthorized access that I facilitated affected
> the computer's use by or for the United States." Further, Jerry Wang admitted to
> "knowing[ly] mak[ing] and us[ing] a false document, specifically the Academic

7

Warning Letter for Herguan University, knowing that it contained a materially false, fictitious, or fraudulent statement" and that "the statement was material to the activities or decision of the agency or department[.]

*Id.* (quoting Plea Agmt. ¶¶ 1–2).

Plaintiff argued before the Appeals Team that the withdrawal of certification was barred by "laches and estoppel" because Jerry Wang's conduct occurred in 2010 and 2011, approximately 5 years before the withdrawal of certification. *Id.* at 6. However, the Appeals Team "reject[ed] Herguan's contention," and held that "[a]s in the context of recertification, 'assessment by [the Exchange Program] of a school . . . will focus primarily on overall school compliance, but may also include examination of individual [Designated Official] compliance as data and circumstances warrant. Past performance of these individuals, whether or not they continue to serve as principal designated school officials . . . will be considered.'" *Id.* Moreover, the Appeals Team noted that "while this case has taken a long time to effectuate [the Exchange Program's congressionally mandated duty to monitor a school's compliance] because of related issues and litigations, [the Exchange Program] cannot permit such flagrant violations of the regulations without shirking its own duties." *Id.*

**D.** ***Herguan III* Suit and Initial Stages of the Instant Suit, *Herguan IV***

On June 27, 2016, before the Appeals Team Decision on September 1, 2016, Plaintiff filed a *Bivens* action for violation of the First, Fourth, and Fifth Amendments against Jason Kanno and Susanna Warner, the Exchange Program employees who were in charge of Plaintiff's case. *See Herguan Univ. v. Kanno* ("*Herguan III*"), N.D. Cal. Case No. 16-CV-3619-LHK ECF No. 1. In *Herguan III*, the Plaintiff alleged that Kanno and Warner attempted to conspire with accrediting agencies to revoke its accreditation in an attempt to force the Plaintiff to cease operations. *Id.* Plaintiff also alleged that Kanno and Warner had a "racist agenda to shut down Asian owned and operated [Exchange Program] certified universities such as Herguan." *Id.* *Herguan III* was assigned to the undersigned judge. *Id.* ECF No. 12. On November 22, 2016, after filing the instant suit, Plaintiff voluntarily dismissed *Herguan III*. *Id.* ECF No. 22.

On November 16, 2016, Plaintiff filed the instant suit against ICE and the Exchange

Program.  ECF No. 1 ("Compl.") ("*Herguan IV*").  In the original complaint, Plaintiff alleged four causes of action: (1) judicial review of the Appeals Team Decision pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 551–59; (2) declaratory judgment that Defendants' actions were unlawful, that Plaintiff's certification should be reinstated, and that Defendants should approve the addition of new courses and degree programs for which I-20 forms for F-1 nonimmigrant student visas may be issued; (3) writ of mandamus requiring Defendants to allow Plaintiff to add new courses and degree programs; and (4) violation of equal protection on the same bases described in *Herguan III*.  Compl. ¶¶ 26–39.

On November 17, 2016, Plaintiff filed an ex parte application for a TRO in the instant suit.  ECF No. 7.  On November 18, 2016, the instant suit was assigned to District Judge Beth Freeman.  ECF No. 10.  The ex parte application for a TRO sought to enjoin ICE and the Exchange Program from putting into effect the withdrawal of certification and revocation of access to SEVIS.  *Id.* at 3.  On November 22, 2016, Judge Freeman held a hearing and denied on the record Plaintiff's ex parte application for a TRO.  ECF No. 15.  Judge Freeman issued a written order on December 2, 2016, and held that Plaintiff had failed to show a likelihood of success on the merits.  ECF No. 17 ("TRO Order").  Specifically, at the hearing, Judge Freeman stated: "Frankly, I would dismiss this complaint for failure to state a claim because it's so poorly drafted."  ECF No. 27 at 8.

On December 2, 2016, Judge Freeman sua sponte referred the instant case, *Herguan IV*, to the undersigned judge to determine whether it is related to *Herguan III*.  ECF No. 18.  On December 12, 2016, the Court related the instant case to *Herguan III*.  ECF No. 19.

On December 12, 2016, Plaintiff appealed the denial of Plaintiff's ex parte application for a TRO to the Ninth Circuit.  ECF No. 21; 9th Cir. Case No. 16-17261.

### E.    Motions to Dismiss and Dismissal of Plaintiff's Interlocutory Appeal in the Instant Suit

On January 31, 2017, Defendants filed a motion to dismiss Plaintiff's original complaint in the instant case.  ECF No. 29.  On February 27, 2017, because Plaintiff failed to file an opposition, the Court granted Defendants' motion to dismiss.  ECF No. 36.  The Court provided leave to

9

amend and stated that "failure to cure the deficiencies identified in Defendants' motion to dismiss will result in dismissal with prejudice of Plaintiff's claims." *Id.* at 2.

On March 29, 2017, Plaintiff filed an amended complaint. *See* FAC. The FAC contains three causes of action: (1) judicial review of the Appeals Team Decision pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 551–59; (2) declaratory judgment that Defendants' actions were unlawful, that Plaintiff's certification should be reinstated, and that Defendants should approve the addition of new courses and degree programs for which I-20 forms for F-1 nonimmigrant student visas may be issued; and (3) violation of equal protection. FAC ¶¶ 26–40.

On April 12, 2017, Defendants filed a motion dismiss the FAC. ECF No. 39 ("Mot."). On April 26, 2017, Plaintiff filed an opposition, ECF No. 40 ("Opp'n"), and on May 2, 2017, Defendants filed a reply, ECF No. 41 ("Reply").

On May 9, 2017, the Ninth Circuit dismissed Plaintiff's appeal of the order denying Plaintiff's ex parte application for TRO for failure to file an opening brief. ECF No. 42.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*,

10

519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).

## B.    Judicial Review Under the APA

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *See* 5 U.S.C. § 702. An agency action may be set aside under the APA only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See id.* § 706(2)(A).

"To determine whether agency action is arbitrary or capricious, a court must consider 'whether the decision was based on a consideration of the relevant factors and whether there has been clear error of judgment.'" *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 859 (9th Cir. 1999) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)); *see also Pac. Coast Fed'n of Fishermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001) ("Agency action should be overturned only when the agency has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"). This standard is a "deferential" one. *Sierra Club v. Bosworth*, 510 F.3d 1016, 1022 (9th Cir. 2007). Nonetheless, "to withstand review the agency must articulate a rational connection between the facts found and the conclusions reached." *Id.* at 1023 (brackets and internal quotation marks omitted). Courts "will defer to an agency's decision only if it is 'fully informed and well-considered.'" *Id.* (quoting *Save the Yaak Comm. v. Block*, 840 F.2d 714, 717 (9th Cir. 1988)).

### C. Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III. DISCUSSION

Defendants argue that Plaintiff fails to state a claim on its APA, declaratory judgment, and equal protection causes of action. Plaintiff argues that Defendants rely on facts that convert this motion to a motion for summary judgment and that Plaintiff states a claim on its APA, declaratory judgment, and equal protection causes of action. The Court first addresses whether the instant motion must be converted into a motion for summary judgment and then discusses Plaintiff's

12

APA, declaratory judgment, and equal protection causes of action.

### A.    Conversion to a Motion for Summary Judgment

The Court first addresses Plaintiff's argument that the Government relies on facts that require the Court to convert the instant motion to a motion for summary judgment. A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); see also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").

The Court addresses whether conversion to a motion for summary judgment is necessary for each claim separately. Plaintiff currently seeks judicial review under the APA, recovery for an alleged equal protection violation, and a declaratory judgment that various administrative decisions were incorrectly decided. The Court addresses whether conversion to a motion for summary judgment is necessary for each claim in turn.

First, with respect to the APA claim, the Court may consider matters outside the pleadings without converting Defendants' Motion to Dismiss to a motion for summary judgment. "[W]hen a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal." *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). Accordingly, "'[t]he entire case on review is a question of law,' and the 'complaint, properly read, actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action.'" *Id.* (quoting *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)). Thus, "[this Court's] review . . . is based on the agency record and limited to determining whether the agency acted arbitrarily or capriciously." *Id.*; *see also Univ. Med. Ctr. of S. Nev. v. Shalala*, 173 F.3d 438, 440 n. 3 (D.C. Cir. 1999) (explaining that when reviewing agency action the question of whether the agency acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record, regardless of whether it is presented in

13

the context of a motion for judgment on the pleadings or in a motion for summary judgment).

In APA cases the administrative record is "the whole record," which "consists of all documents and materials directly or indirectly considered by agency decision-makers." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) ("'The whole record' includes everything that was before the agency pertaining to the merits of its decision."). Accordingly, the Court may consider the Exchange Program's withdrawal of certification, the Appeals Team Decision, and the documents on which both of those decisions relied, which includes Jerry Wang's Plea Agreement and Plaintiffs' ex parte applications for TROs and the subsequent denials, without converting the instant motion to a motion for summary judgment.

Second, with respect to Plaintiff's equal protection claim, the entirety of this claim is based on allegations in the FAC and emails that were attached to Plaintiff's original complaint. *See* FAC ¶ 17–18. Those emails are explicitly referenced in the FAC as the basis of Plaintiff's equal protection claim. *Id.* "A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908. Thus, because the emails were attached to the original complaint and are explicitly referenced as the basis for Plaintiff's equal protection claim, the emails may be considered without converting the instant motion to a motion for summary judgment. Defendants do not ask the Court to look beyond these two sources. Accordingly, Defendants' Motion to Dismiss Plaintiff's equal protection claim need not be converted to a motion for summary judgment.

Third, with respect to the declaratory judgment cause of action, Defendants' challenge is based entirely on a lack of subject matter jurisdiction and does not rely on facts outside the complaint. Accordingly, the Court's consideration of this claim does not require the instant motion to be converted to a motion for summary judgment.

Accordingly, the Court need not convert the instant motion to the motion for summary judgment.

14

### B.   APA Claim

Defendants argue that the Appeals Team Decision affirming the Exchange Program's withdrawal of certification was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Specifically, Defendants argue that the Appeals Team Decision was not arbitrary and capricious or contrary to law because Jerry Wang, the Principal Designated Official for Plaintiff, clearly violated Exchange Program regulations as shown by his admissions in his plea agreement. The Exchange Program and the Appeals Team relied on 8 C.F.R. § 214.4(a)(2)(vi), which provides that Exchange Program certification will be withdrawn if it "is determined to no longer be entitled to certification for any valid and substantive reason including, but not limited to . . . (vi) conduct on the part of a [Designated Official] that does not comply with the regulations." 8 C.F.R. § 214.4(a)(2)(vi). The Appeals Team determined that the Exchange Program had correctly withdrawn Plaintiff's certification because Jerry Wang's actions as Plaintiff's Principal Designated Official violated multiple regulations. *See* Appeals Team Decision at 5.

In response, Plaintiff does not contest that Jerry Wang violated Exchange Program regulations or that Jerry Wang's actions can be imputed to Plaintiff for the purpose of withdrawing certification. Nor does Plaintiff make any argument that the Appeals Team Decision was arbitrary and capricious. Plaintiff does not allege that there was no "rational connection between the facts found and the conclusions reached." *Sierra Club*, 510 F.3d at 1022. Indeed, Plaintiff does not contest that the Exchange Program can withdraw a school's certification if a Designated Official commits a felony that also "does not comply with the regulation." 8 C.F.R. § 214.4(a)(2)(vi).

Instead, Plaintiff raises a single legal argument that the Appeals Team Decision was "not in accordance with the law" because under § 214.4(a)(2)(vi), certification can only be withdrawn for present regulatory violations, not for violations that were completed in the past. Plaintiff asserts that § 314.4(a)(2)(vi)'s use of the present tense phrase "does not comply with the regulations" shows that a Designated Official must be engaging in such non-compliant conduct on an ongoing basis for certification to be withdrawn. In response, Defendants argue that

15

§ 214.4(a)(2)(vi) allows the Exchange Program to withdraw certification based on past conduct of Designated Officials.

The Court first addresses the standard by which the Court must review the Exchange Program's interpretation of its regulations, and then discusses whether the Appeals Team Decision was contrary to those regulations.

### 1.    Standard for Reviewing Exchange Program Interpretation of Its Regulations

The United States Supreme Court has stated that courts must "defer to an agency's interpretation of its own regulation, advanced in a legal brief, unless that interpretation is 'plainly erroneous or inconsistent with the regulation'" or there is any "'reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.'" *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 (2011) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). "Indicia of inadequate consideration include conflicts between the agency's current and previous interpretations"; "signs that the agency's interpretation amounts to no more than a convenient litigating position"; or an appearance that the agency's interpretation is no more than a "post hoc rationalization advanced by an agency seeking to defend past agency action against attack." *See Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 830 n.4 (9th Cir. 2012) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 154 (2012)) (citations and internal quotation marks omitted). Moreover, for this deference to apply, the regulation at issue must be ambiguous. *See Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) ("[W]here an agency interprets its own regulation, even if through an informal process, its interpretation of an *ambiguous* regulation is controlling under *Auer* unless 'plainly erroneous or inconsistent with the regulation.'" (quoting *Auer*, 519 U.S. at 461 (emphasis added)).

Here, the Department of Homeland Security ("DHS") is the administrative agency that wrote, and is in charge of administering, through the Exchange Program, the regulations at issue. See 73 Fed. Reg. 55683 (Sept. 26, 2008) (DHS final rulemaking, which enacts the current version of 8 C.F.R. §§ 214.3 & 214.4). DHS, acting through the Exchange Program, found that

16

withdrawal was appropriate in this case under § 214.4(a)(2)(vi) because Jerry Wang had engaged in past "conduct that does not comply with the regulations." On appeal, the Appeals Team, an independent review body within DHS, agreed that § 214.4(a)(2)(vi) includes past conduct and rejected arguments that Jerry Wang's past conduct cannot be the basis for withdrawal of certification because of the time that had elapsed. In the instant suit, Defendants, ICE and the Exchange Program (both agencies within DHS), assert once again in their legal briefs that § 214.4(a)(2)(vi) allows withdrawal of certification based on past conduct.

In addition to agency adjudications and the legal briefing in the instant suit, DHS has interpreted § 214.4(a)(2) in the following manner:

> [U]nder longstanding statutes and regulations, [the Exchange Program] may withdraw on notice any school's participation in the F-1 student program (or deny such a school recertification) for any valid and substantive reason. *See* 8 CFR 214.4(a)(2). For instance, [the Exchange Program] may withdraw certification or deny recertification if [the Exchange Program] determines that a [Designated Official] willfully issued a false statement, including wrongful certification of a statement by signature, in connection with a student's application for employment or practical training. *See id.* [The Exchange Program] may take the same action if it determines that a [Designated Official] *engaged in conduct that does not comply with DHS regulations*. *Id.*

81 Fed. Reg. 13040, 13096 (March 11, 2016) (emphasis added). This statement shows that DHS has interpreted § 214.4(a)(2) to allow withdrawal of certification if a Designated Official has, in the past, "issued a false statement" or "engaged in conduct that does not comply with DHS regulations." *Id.*

Thus, there is no indication in the instant suit that DHS's interpretation of the regulations conflicts with past interpretations, that it amounts to a "convenient litigating position," or that it is a "post hoc rationalization." *Price*, 697 F.3d at 830 n.4. Instead, the decisions of the Exchange Program and the Appeals Team, Defendants' position in their legal briefs in the instant suit, and DHS's interpretation of the regulatory provision all consistently interpret § 214.4(a)(2)(vi) as applying to a Designated Official's past conduct. *Cf. Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015) (holding in the context of individual immigration status appeals that the Board of Immigration Appeals' interpretations of immigration regulations in a particular case would be

United States District Court
Northern District of California

given "an appropriate level of deference" under *Auer*). Thus, the Court will not overturn DHS's interpretation of § 214.4(a)(2)(vi) unless it is "plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461.

### 2. Whether the Appeals Team Decision was Contrary to Law

The Court next turns to whether the Appeals Team Decision was based on an interpretation of its regulations that was "contrary to law." 5 U.S.C. § 706. For the reasons discussed below, the Court finds that § 214.4(a)(2)(vi) allows withdrawal of certification for past conduct of Designated Officials, and that, at the very least, such an interpretation of the regulation is not "plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461.

As noted above, the regulation here states that a school's certification will be withdrawn "for any valid and substantive reason including, but not limited to . . . (vi) conduct on the part of a [Designated Official] that does not comply with the regulations." 8 C.F.R. § 214.4(a)(2)(vi). Plaintiff argues that the use of the present tense in the phrase "does not comply" means that this regulatory provision only allows withdrawal for the present conduct of the presently appointed Designated Official. Plaintiff provides no case law or regulatory decision to support this contention.

Morever, Plaintiff's interpretation is wrong based on (1) the plain language of § 214.4(a)(2)(vi); (2) the context surrounding § 214.4(a)(2)(vi); and (3) the purpose of § 214.4(a)(2). *Cf. ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1210 (9th Cir. 2015) ("A primary canon of statutory interpretation is that the plain language of a statute should be enforced according to its terms, in light of its context."; "Thus, we examine the statute as a whole, including its purpose and various provisions." (citations omitted)); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1157 (9th Cir. 2004) (applying canons of statutory interpretation to the interpretation of regulations). The Court addresses the plain language, context, and purpose of § 214.4(a)(2) in turn, and then discusses arguments that Plaintiff concedes.

### a. Plain Language of § 214.4(a)(2)(vi)

The plain language of § 214.4(a)(2)(vi) does not place any limitations on the time of the

18

conduct that is the basis of the withdrawal of certification. The term "conduct" is not prefaced by any words that limit the time when the conduct occurred, such as "past" or "present," and the regulation does not indicate that the Designated Official at issue needs to be the school's Designated Official at the time of withdrawal. Thus, there is nothing in § 214.4(a)(2)(vi) that places in time the Designated Official's conduct that serves as the basis for withdrawal of certification.

Moreover, although § 214.4(a)(2)(vi) includes the present tense phrase "does not comply with the regulations," that present tense phrase does not limit § 214.4(a)(2) to only present conduct as Plaintiff contends. The Ninth Circuit has held that "[t]he present tense is commonly used to refer to past, present, and future all at the same time." *United States v. Williams*, 659 F.3d 1223, 1226–27 (9th Cir. 2011) (quoting *Coal. for Clean Air v. So. Cal. Edison Co.*, 971 F.2d 219, 225 (9th Cir. 1992)).[3] For example, "'Congress uses the present tense to establish criminal liability for "[a]ny person who knowingly—(A) *makes* any false material statement, . . . [or] (B) *fails* to notify or report as required under this Act; . . .' 42 U.S.C. § 7413(c)(2) (emphasis added). Yet clearly the [statute] do[es] not forgive criminal violations that occurred [in the past] just because Congress speaks in the present tense." *Clean Air*, 971 F.2d at 225.

The regulatory provision here is similar to the criminal provision in *Clean Air*. As § 214.4 provides, certification can be withdrawn for "any valid and substantive reason." 8 C.F.R. § 214.4(a)(2). One such valid and substantive reason is "conduct by the [Designated Official] that does not comply with the regulations." *Id.* Thus, just as criminal liability is established under the above-identified provision in *Clean Air*, if a person "fails to notify or report as required under this act" even if that "fail[ure] to notify or report" occurred in the past, a "valid and substantive

---

[3] The United States Supreme Court has stated that this principle does not apply when considering whether a statute applies retroactively to conduct that occurred before the statute was enacted. *See Carr v. United States*, 560 U.S. 438, 446 (2010) (holding that child sex offender statute did not punish travel that occurred before the statute was enacted because the word "travel" was in the present tense); *see also United States v. Jackson*, 480 F.3d 1014, 1018 (9th Cir. 2007) ("The use of the present tense suggests that statutory element does not apply to travel that occurred before the statute's enactment."). However, there is no issue of retroactive application of the regulations here—§ 214.4(a)(2) has not been modified since 2008.

19

Case No. 16-CV-06656-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

reason" for withdrawal of certification is established any time a Designated Official engages in "conduct . . . that does not comply with the regulations." Indeed, the DHS interprets these provisions to mean that once a violation of the regulations occurs, a school is "no longer eligible" for certification. *See* DHS, Loss of SEVP Certification, Dec. 19, 2014, https://studyinthestates.dhs.gov/2014/12/loss-of-sevp-certification ("If a school . . . fails to comply with [Exchange Program] requirements while in status, the school is no longer eligible to enroll nonimmigrant students."). Like in *Clean Air*, the regulations do not require the Exchange Program to "forgive" a school for a Designated Official's regulatory violation just because the violation occurred in the past.

Indeed, the Exchange Program especially did not need to "forgive" Jerry Wang's past actions in this case because the withdrawal of certification only occurred because Plaintiff essentially requested a delay in the Exchange Program's proceedings because of Jerry Wang's criminal proceedings. Plaintiff responded to the 2012 Notice of intent to withdraw certification by stating that "the confiscation of 'Herguan's computers and documents . . . rendered it virtually impossible to respond to the [2012 Notice]." Appeals Team Decision at 4. Moreover, Plaintiff's response to the 2012 Notice raised issues that overlapped directly with the factual issues that were disputed in Jerry Wang's criminal proceedings. *Id.* (noting the factual overlap of the issues in Jerry Wang's criminal trial and the response to the 2012 Notice). As a result of these responses from Plaintiff, the Exchange Program decided to "allow[] the criminal case to proceed first while continuing to monitor the school and permitting it to operate." *Id.* Thus, the Exchange Program delayed its pursuit of withdrawal of certification for similar reasons that federal courts delay civil proceedings pending criminal trials where the issues in the civil and criminal cases overlap. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (noting that a stay in civil proceedings may be granted where "the interests of justice seem [] to require such action" because of the criminal defendant's Fifth Amendment rights, prejudice and burden to the parties, and the public interest). The Court agrees with Judge Freeman's conclusion at the hearing on Plaintiff's ex parte application for a TRO in the instant case: the Court is "not persuaded at all that the delay

of the agency in adjudicating this matter inures to the detriment of the agency when the delay was based solely on your client's request for a delay based upon the criminal charges pending." ECF No. 27 (Transcript of TRO hearing). Thus, especially on the facts in this case, a delay in enforcement does not provide a reason to "forgive" Plaintiff's past violations of the regulations under § 214.4(a)(2)(vi).

### b. Context Surrounding § 214.4(a)(2)(vi)

Plaintiff's interpretation is also in direct conflict with the context of the regulation, which shows that § 214.4(a)(2)(vi) allows withdrawal of certification for past conduct. First, § 214.4(a)(2) provides broad powers for the withdrawal of certification that would conflict with Plaintiff's narrow interpretation of the regulation. Section 214.4(a)(2) uses broad language that allows withdrawal of certification for "any valid and substantive reason." Indeed, § 214.4(a)(2) states that such reasons "include[e], but [are] not limited to" a list of 19 reasons why withdrawal of certification would be appropriate. 8 C.F.R. § 214.4(a)(2). Narrowing the scope of § 214.4(a)(2)(vi) to only present conduct conflicts with the broad authority provided to the Exchange Program by this provision. *See* TRO Order at 7 (rejecting argument that § 214.4(a)(2)(vi) is limited to present acts because "[t]he subsection cited by Plaintiff provides 18 additional reasons [the Exchange Program] may withdraw a school's certification, and the regulation itself makes plain that the list is not intended to be exhaustive.").

Second, the regulations explicitly allow consideration of past conduct for denials of recertification, the standards for withdrawal of certification and denials of recertification overlap, and thus past conduct may be the basis for a withdrawal of certification. As noted in the background section above, a school must apply for recertification every two years. 8 C.F.R. § 214.3(e)(2). The parties agree that the Exchange Program may consider past conduct for denials of recertification. *See, e.g.*, 8 C.F.R. § 214.3(h)(2)(iii)(B)("Past performance of [Designated Officials], whether or not they continue to serve as principal designated school officials or [Designated Officials] will be considered in any petition for recertification of the school.").

Although Plaintiff argues that these provisions concerning past conduct *only* apply to

denial of recertification, Plaintiff ignores the significant overlap in the standards for withdrawal of certification and denial of recertification. These overlaps show that past conduct can be the basis of the Exchange Program's withdrawal of a school's certification. The major points of overlap are described in § 214.4(a)(2) and § 214.3(h)(3)(iii), which the Court addresses in turn.

The terms of § 214.4(a)(2), the basis of the withdrawal of Plaintiff's certification, applies to both withdrawals of certification and denials of recertification. *Id.* (stating that certification "will be withdrawn on notice subsequent to out-of-cycle review, or recertification denied" based on the same list of "valid and substantive reasons"). As a result, Plaintiff's position that past conduct can be considered for denials of recertification, but cannot be considered for withdrawals of certification, would cause "conduct . . . that does not comply with the regulations" under § 214.4(a)(2)(vi) to have inconsistent meanings. Specifically, § 214.4(a)(2)(vi) would include past conduct for denials of recertification and only present conduct for withdrawals of certification. The same words in a regulation are usually interpreted to mean the same thing. *Cf. Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1708 (2012) ("[T]here is a presumption that a given term is used to mean the same thing throughout a statute."); *Flores-Chavez*, 362 F.3d at 1157 (applying canons of statutory interpretation to the interpretation of regulations). Plaintiff's proposed interpretation is contrary to this presumption of statutory interpretation. Thus, to avoid violating this presumption, § 214.4(a)(2)(vi) should include the consideration of past conduct, whether in the context of denials of recertification or withdrawal of certification.

Moreover, § 214.3(h)(3)(iii) describes the scope of out-of-cycle review and explicitly incorporates the standards for evaluating recertification and the consideration of past conduct. Section 214.3(h)(3)(iii) states that the Exchange Program begins an out-of-cycle review in order to "verify the school's continued eligibility for [Exchange Program] certification *pursuant to paragraph (a)(3) of this section*." *Id.* (emphasis added). In turn, § 214.3(a)(3) lays out the eligibility requirements for certification and for recertification, which includes an evaluation of a school's "compli[ance] during its previous period of certification or recertification [with the regulations]." The Exchange Program may withdraw certification under § 214.4(a)(2) if

22

United States District Court
Northern District of California

"noncompliance or ineligibility of a school is identified." *Id.* § 214.4(h)(3)(iii). Thus,

§ 214.3(h)(3)(iii) explicitly requires the Exchange Program to consider the eligibility and

compliance requirements for recertification in § 214.3(a)(3)—including the consideration of past

conduct—as part of an out-of-cycle review, which could lead to withdrawal of certification. This

is strong contextual evidence that the Exchange Program may withdraw a school's certification for

past conduct.

In sum, § 214.4(a)(2) provides broad powers to the Exchange Program for withdrawal of

certification. The list of reasons to withdraw certification or deny recertification in § 214.4(a)(2)

are the same. Moreover, out-of-cycle review for withdrawal of certification references the denial

of recertification standard, which requires consideration of past conduct. Thus, § 214.4(a)(2)'s

context supports a finding that the standards for withdrawal of certification and denial of

recertification overlap and that past conduct may be considered as part of a withdrawal of

certification.

### c.      Purpose of § 214.4(a)(2)(vi)

Plaintiff's proposed interpretation of § 214.4(a)(2)(vi) would also lead to counterintuitive

results that would undercut the Exchange Program's ability to administer its regulations.

Plaintiff's interpretation would forbid the Exchange Program from withdrawing certification in

any circumstance where the Designated Official's regulation-violating conduct has ended. Under

such an interpretation, a school and Designated Official would be able to avoid immediate

repercussions to their actions by simply ceasing bad conduct or firing their Designated Official

when the Exchange Program begins its investigation. Similarly, if the regulation-violating

conduct involved discrete actions, rather than ongoing conduct, Plaintiff's proposed interpretation

would eliminate the ability to ever withdraw certification because such discrete actions would

always be in the past. *See* 73 Fed. Reg. 55683, 55696 (rejecting comment that withdrawal of

certification should "be expanded to include a 'pattern' of such behavior" rather than "limited to a

single violation"). Moreover, because the bases for denying recertification and withdrawing

certification are identical, it makes sense that the Exchange Program would be able to withdraw

23

certification if facts about prior conduct come to light that show that a prior recertification should have been denied. Thus, the Court finds that the Exchange Program's need to be able to administer its regulations supports Defendants' interpretation of § 214.4(a)(2)(vi).

Thus, based on the plain language, context, and purpose of § 214.4(a)(2), the Court agrees with DHS and Defendants that § 214.4(a)(2)(vi) allows withdrawal of certification for past conduct. At the very least, Plaintiff fails to overcome *Auer* deference by showing that Defendants' interpretation is "plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461.

### d. Plaintiff's Conceded Arguments

Plaintiff fails to make, and thus concedes, three arguments Plaintiff made in prior proceedings. *See Pecover v. Elec. Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009) ("[P]laintiffs have effectively conceded, by failing to address the issue in their opposition memorandum."). First, Plaintiff previously argued in its application for a TRO in the instant case that the Appeals Team applied the wrong statutory provision when affirming the withdrawal of certification. Judge Freeman found the argument to be without merit. TRO Order at 6 ("Herguan cites no authority to support its claim that [the Exchange Program] relied on the incorrect regulation."). Second, before the Appeals Team and in the ex parte application for a TRO, Plaintiff argued that the common law doctrines of laches and estoppel should have prevented withdrawal of certification based on Jerry Wang's conduct after such a long period of time. Judge Freeman also found this argument to be without merit. *Id.* at 7 ("Herguan provides no authority supporting its argument. In addition, a review of the facts reveals just the opposite—[the Exchange Program] raised the issue of Mr. Wang's conduct several times since his arrest in 2012."); ECF No. 27 (Transcript) ("I am not persuaded at all that the delay of the agency in adjudicating this matter inures to the detriment of the agency when the delay was based solely on your client's request for a delay based upon the criminal charges pending."). Plaintiff raised these arguments previously, they were rejected, and Plaintiff fails to raise them in response to Defendants' Motion to Dismiss. Accordingly, the Court finds that Plaintiff concedes these arguments.

Finally, Plaintiff fails to argue that the Appeals Team Decision was arbitrary and capricious beyond the argument that its decision did not comply with the law because § 214.4(a)(2)(vi) does not include past conduct. Accordingly, the Court need not consider whether the Appeals Team Decision was arbitrary and capricious for any other reason.

In sum, the best reading of the regulation in this case is that past conduct can give rise to the withdrawal of certification. To the extent § 214.4(a)(2)(vi) is ambiguous, Defendants' interpretation is subject to *Auer* deference because DHS asserts that § 214.4(a)(2)(vi) encompasses past conduct, and Defendants' interpretation is "not plainly erroneous or inconsistent with the regulations." *Auer*, 519 U.S. at 461. Thus, the Court finds that the Appeals Team's affirmance of the Exchange Program's withdrawal of certification complied with the requirements of § 214.4(a)(2). Therefore, the Court GRANTS Defendants' Motion to Dismiss.

The dismissal is with prejudice because Plaintiff failed to respond to Defendants' previous motion to dismiss. The Court granted Defendants' unopposed motion to dismiss and notified Plaintiff that "failure to cure the deficiencies identified in Defendants' motion to dismiss will result in dismissal with prejudice of Plaintiff's claims." ECF No. 36 at 2. Plaintiff's first amended complaint only made minor changes and did not cure the deficiencies identified in Defendants' original motion to dismiss. The Court finds that any further amendment would be futile. *See Carvalho*, 629 F.3d at 892 (allowing courts to deny leave to amend if leave to amend would be futile). Accordingly, the dismissal of Plaintiff's APA claim is with prejudice.

## C.       Equal Protection

Defendants argue that Plaintiff fails to state an equal protection claim. "To state a . . . claim for violation of the Equal Protection Clause, 'a plaintiff must show that the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" *Lopez v. City & Cty. of S.F.*, 2014 WL 2943417, at *11 (N.D. Cal. June 30, 2014) (quoting *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2011)). With respect to selective enforcement, "the conscious exercise of some selectivity in enforcement [of federal law] is not in itself a federal constitutional violation so long as the selection was [not] deliberately based upon

an unjustifiable standard such as race, religion, or other arbitrary classification." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (citation and internal quotation marks omitted). "A plaintiff may satisfy this standard by alleging (1) that he was treated differently from others similarly situated, (2) that this unequal treatment was based on an impermissible classification; (3) that the defendant acted with discriminatory intent in applying this classification; and (4) that he suffered injury as a result of the discriminatory classification." *Lopez*, 2014 WL 2943417 at *11 (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).[4]

Here, Plaintiff alleges that internal emails between employees of the Exchange Program show that Defendants had "a clear agenda to ruin and destroy Herguan at all costs" and that Exchange Program employees reached out to accrediting agencies "in an attempt to shut down the university." FAC ¶ 17. Moreover, Plaintiff alleges that internal emails show that Jason Kanno and Susanna Warner, Exchange Program employees who were assigned to Plaintiff's case, had "a racist agenda to shut down Asian owned and operated [Exchange Program] certified universities such as Herguan. The e-mails reflect that Herguan was routinely referred to in a derogatory fashion by [Exchange Program] officers as "the Chinese." *Id.* ¶ 18.

Plaintiff's allegations in the instant case are insufficient because (1) Plaintiff's complaint fails to adequately allege that it was "similarly situated" to any other university, and (2) Plaintiff's complaint fails to adequately allege that the enforcement decision was "based upon an unjustifiable standard such as race, religion, or other arbitrary classification," *Bordenkircher*, 434 U.S. at 364.

As noted above, an equal protection claim can only be brought if the Plaintiff was treated differently from similarly situated universities. Here, Plaintiff does not allege that any non-

---

[4] Plaintiff's complaint does not identify on what legal basis Plaintiff is bringing its equal protection claim. The Court construes the claim to be a constitutional claim based on the Fifth and Fourteenth Amendments. In Plaintiff's opposition, for the first time, Plaintiff refers to equal protection under "the Civil Rights Act of 1965 and EEOC regulations concerning discriminatory conduct." Opp'n at 6–7. However, Plaintiff makes no mention of such statutory or regulatory bases in its original complaint or in the FAC. Accordingly, the Court need not address these statutory or regulatory bases for relief.

26

Chinese-owned universities were similarly situated to Plaintiff or were treated differently. Indeed, Plaintiff would need to allege, and then later prove, that the Designated Official of non-Chinese-owned universities were convicted of criminal acts that were also in violation of the Exchange Program Regulations, but that those criminal acts did not result in withdrawal of certification. Here, Plaintiff fails to allege that any university similarly situated to Plaintiff was treated differently.

Moreover, Plaintiff does not adequately allege that the enforcement decision was part of a racist agenda. Plaintiff asserts that its equal protection theory arises from "e-mails [that] reveal a racist agenda to shut down Asian owned and operated [Exchange Program] certified universities such as Herguan." FAC ¶ 17. Allegedly, "[t]he e-mails reflect that Herguan was routinely referred to in a derogatory fashion by [Exchange Program] officers as 'the Chinese.'" *Id.* In Plaintiff's opposition, Plaintiff argues that its equal protection claim "is based on the [Exchange Program] adjudicator Kanno and his supervisor Warner classifying Herguan's owners as the 'Chinese' in emails between them." Opp'n at 6. The emails referred to in FAC are attached to the original complaint. The emails involving statements about "the Chinese" are set forth below:

> *Email from Virginia Kice to Ernestine Fobbs, Office of Public Affairs ("OPA") Officials:*
>
> While you were out....we got an inquiry from one of the Indian new organizations asking if there had been any developments on the Herguan University case - see below. I've told the reporter the prosecution is still pending...but she is also wondering what's happening with the [] decertification. Our SF HSI agents believe Herguan's attorney participated in a teleconference with [Exchange Program] officials last week in an effort to convince [the Exchange Program] to keep the school open. Can you check with [the Exchange Program] to find out the latest and determine what our public face on this should be?
>
> . . . .
>
> *Email exchange between three ICE officials, Kathryn Kennedy, Susanna Warner, and Jason Kanno, and an OPA official, Ernestine Fobbs:*
>
> **Kathryn Kennedy**: See the email [above] that Ernestine in ICE [Office of Public Affairs ("OPA")] got from Virginia Kice, her OPA colleague in the Western Regional Office. The media inquiry is regarding the status of Herguan. Can you guys let us know what can/cannot be said about Herguan and it's [sic] status?
>
> Thanks!

27

. . . .

**Susanna Warner**: I suggest similar language as what we gave to the Chinese.

. . . .

**Kathryn Kennedy**: Huh?  What did we give the Chinese?

. . . .

**Ernestine Fobbs**: We have not given them anything yet.  Kate is waiting to hear back from State.  What I need now is to clarify if [the Exchange Program] had a conversation with the Herguan U. attorney as mentioned.  No other respond [sic] will be needed at this time.

. . . .

**Jason Kanno**: Yes.  We had an interview with the attorney on 10/11.

. . . .

**Susanna Warner**: Jason--let me handle

. . . .

**Jason Kanno**: You got it.

ECF No. 1-3 at 13–15.

Plaintiff's allegations that Kanno and Warner referred to Herguan and its owners as "the Chinese" are belied by the emails on which Plaintiff bases its claim.  When discussing Plaintiff in the above emails, the officials consistently referred to Plaintiff as "Herguan" or "Herguan U." or discussed the "Herguan U. attorney."  In contrast, the statements about "the Chinese" were used to respond to a question about the information that needed to be provided in response to "an inquiry from one of the Indian news organizations."  *Id.* at 15.  Warner responded to that inquiry by stating that ICE should provide the same information as had been provided to "the Chinese."  *Id.* Kennedy asked what had been given to "the Chinese."  *Id.*  Fobbs then responded that nothing had been given to the Chinese because "Kate [was] waiting to hear back from" the State Department. *Id.*

The statement "the Chinese" in the emails between the officials, reproduced above, did not refer to Plaintiff or its owners.  The ICE and OPA officials were discussing what updates should be provided to an Indian News Organization about the negotiations with Plaintiff.  *See id.* (Jason Kanno confirming that the Exchange Program "had an interview with the [Herguan U.] attorney

on 10/11"). Yet, Plaintiff already knew the status of the negotiations because Plaintiff or

Plaintiff's attorney had been a participant in those negotiations. Thus, the statement about "the

Chinese" refers to a different party that was not privy to that information, not Plaintiff or its

owners. Finally, although Plaintiff's complaint alleges that Jason Kanno is one of the perpetrators

of having used the phrase "the Chinese," Jason Kanno never used the phrase "the Chinese" in the

above emails, only Warner and Kathryn Kennedy used that phrase. Nothing in the above email

exchange indicates that the officials referred to Plaintiff or its owners by the term "the Chinese."

Thus, Plaintiff fails to adequately allege that the Exchange Program or ICE acted because of a

racist agenda.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss. The dismissal is with

prejudice because Plaintiff failed to respond to Defendants' previous motion to dismiss. The

Court granted Defendants' unopposed motion to dismiss and notified Plaintiff that "failure to cure

the deficiencies identified in Defendants' motion to dismiss will result in dismissal with prejudice

of Plaintiff's claims." ECF No. 36 at 2. Plaintiff's first amended complaint only made minor

changes and did not cure the deficiencies identified in Defendants' original motion to dismiss.

The Court finds that any further amendment would be futile. *See Carvalho*, 629 F.3d at 892

(allowing courts to deny leave to amend if leave to amend would be futile). Accordingly, the

dismissal of Plaintiff's equal protection claim is with prejudice.

### D. Declaratory Judgment

Plaintiff seeks a declaratory judgment that (1) "Defendants' actions in terminating

[Plaintiff's] I-17 and denying it access to SEVIS are erroneous and contrary to law and that its I-

17 status should be reinstated," and (2) "Defendants' actions in failing to upgrade [Plaintiff's] I-17

petition to include new courses and degree programs is erroneous and contrary to law." FAC

¶¶ 32–33. Besides the legal arguments Plaintiff raises in opposition to Defendants' Motion to

Dismiss Plaintiff's APA claim, Plaintiff provides no argument regarding its declaratory judgment

claim. In fact, Plaintiff concedes that "the declaratory cause of action depends on other causes of

action." Opp'n at 2.

Case No. 16-CV-06656-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

Plaintiff fails to oppose Defendants' Motion to Dismiss with respect to the declaratory judgment claim and concedes that the declaratory judgment claim depends on Plaintiff's other claims.  The Court has already dismissed Plaintiff's other claims with prejudice.  Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's declaratory judgment claim.  The dismissal is with prejudice because Plaintiff failed to respond to Defendants' previous motion to dismiss.  The Court granted Defendants' unopposed motion to dismiss and notified Plaintiff that "failure to cure the deficiencies identified in Defendants' motion to dismiss will result in dismissal with prejudice of Plaintiff's claims."  ECF No. 36 at 2.  Plaintiff's first amended complaint only made minor changes and did not cure the deficiencies identified in Defendants' original motion to dismiss.  The Court finds that any further amendment would be futile.  *See Carvalho*, 629 F.3d at 892 (allowing courts to deny leave to amend if leave to amend would be futile).  Accordingly, the dismissal of Plaintiff's declaratory judgment claim is with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss with prejudice.

**IT IS SO ORDERED.**

Dated: June 28, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 16-CV-06656-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE